**KAZEROUNI LAW GROUP, APC**
David J. McGlothlin (253265)
david@kazlg.com
Pamela E. Prescott, Esq. (328243)
pamela@kazlg.com
245 Fischer Avenue, Unit D1
Costa Mesa, CA 92626
Telephone: (800) 400-6808
Facsimile: (800) 520-5523

*Attorneys for Plaintiff,*
Pi-Yun Kung

### UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **PI-YUN KUNG,** | **Case No.:**   8:23-cv-763 |
| **Plaintiff,** | **COMPLAINT FOR DAMAGES FOR VIOLATION OF** |
| **v.** | |
| **CAPITAL ONE BANK (USA), N.A.; THE LAW OFFICES OF NELSON & KENNARD; EQUIFAX INFORMATION SERVICES LLC; TRANS UNION LLC; AND EXPERIAN INFORMATION SOLUTIONS, INC.** | **I.   FAIR CREDIT REPORTING ACT, 15 U.S.C. §§ 1681, *ET SEQ.*** |
| | **II. CALIFORNIA CONSUMER CREDIT REPORTING AGENCIES ACT, CAL. CIV. CODE § 1785.1, *ET SEQ.*** |
| **Defendants.** | **III. CALIFORNIA IDENTITY THEFT ACT, CAL. CIV. CODE § 1798.92, *ET SEQ.*** |
| | **IV. THE FAIR DEBT COLLECTION PRACTICES ACT 15 U.S.C. § 1692, *ET SEQ.*** |
| | **V. ROSENTHAL FAIR DEBT COLLECTION PRACTICES ACT, CAL. CIV. CODE § 1788, *ET SEQ.*** |
| | **JURY TRIAL DEMANDED** |

**INTRODUCTION**

1. Plaintiff PI-YUN KUNG ("Plaintiff") brings this action to challenge the illegal actions of CAPITAL ONE BANK (USA), N.A. ("Capital One"); THE LAW OFFICES OF NELSON & KENNARD ("Nelson & Kennard"); EQUIFAX INFORMATION SERVICES LLC ("Equifax"); TRANS UNION LLC ("Trans Union") and EXPERIAN INFORMATION SOLUTIONS, INC. ("Experian") (together the "Defendants") for violations of: (1) the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681, *et seq*.; (2) California Consumer Credit Reporting Agencies Act ("CCCRAA"), Cal. Civ. Code § 1785.1, *et seq*.; (3) the California Identity Theft Act ("CITA"), Cal. Civ. Code § 1798.92, *et seq*.; (4) the Fair Debt Collection Practices Act ("FDCPA"). 15 U.S.C. § 1692, *et seq*.; and (5) the Rosenthal Fair Debt Collection Practices Act ("RFDCPA"), Cal. Civ. Code § 1788, *et seq.*

2. This action arises out of Defendants' unlawful conduct with regards to the collection and/or the continued reporting of a fraudulent to Plaintiff's credit reports.

3. The United States Congress has found abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors, and has determined that abusive debt collection practices contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy. Congress wrote the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq*., to eliminate abusive debt collection practices by debt collectors, to ensure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses.

4. The California legislature has determined that the banking and credit system and grantors of credit to consumers are dependent upon the collection of just and owing debts and that unfair or deceptive collection practices undermine the

COMPLAINT FOR DAMAGES

public confidence that is essential to the continued functioning of the banking and credit system and sound extensions of credit to consumers. The Legislature has further determined that there is a need to ensure that debt collectors exercise this responsibility with fairness, honesty, and due regard for the debtor's rights and that debt collectors must be prohibited from engaging in unfair or deceptive acts or practices. *See* Cal. Civ. Code §§ 1788.1 (a)-(b).

5.  In addition, the United States Congress has also found that the banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence, which is essential to the continued functioning of the banking system. As such, Congress enacted the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq. ("FCRA") to insure fair and accurate reporting, promote efficiency in the banking system and protect consumer privacy. The FCRA seeks to ensure consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy because consumer reporting agencies have assumed such a vital role in assembling and evaluating consumer credit and other information on consumers. The FCRA also imposes duties on the sources that provide credit information to credit reporting agencies, called "furnishers."

6.  Plaintiff makes these allegations on information and belief, with the exception of those allegations that pertain to the Plaintiff, or to the Plaintiff's counsel, which Plaintiff alleges on personal knowledge.

7.  While many violations are described below with specificity, this Complaint alleges violations of the statute cited in its entirety.

8.  All violations by Defendants were knowing, willful, and intentional, and Defendants did not maintain procedures reasonably adapted to avoid any such violations.

9.  Unless otherwise stated, all the conduct engaged in by Defendants took place in

1    California and within the County of Orange.

2    10. Unless otherwise indicated, the use of a Defendant's name in this Complaint

3    includes all agents, principles, managing agents, employees, officers, members,

4    directors, heirs, successors, assigns, principals, trustees, sureties, subrogees,

5    representatives, and insurers of that Defendant named.

6    **JURISDICTION AND VENUE**

7    11. This action arises out of Defendants' violations of CITA, FCRA, CCCRAA,

8    FDCPA and RFDCPA.

9    12. Jurisdiction of this Court arises pursuant to 28 U.S.C. § 1331; 15 U.S.C. § 1692, *et*

10   *seq*. (FDCPA); 15 U.S.C. § 1681p (FCRA); and 28 U.S.C. § 1367 for

11   supplemental state claims which are related to claims in the action within such

12   original jurisdiction and form part of the same case or controversy under Article III

13   of the United States Constitution.

14   13. The violations alleged herein against Plaintiff, at all relevant times herein,

15   occurred in the County of Orange, State of California, where Plaintiff resides.

16   14. Because Defendants conduct substantial business directed to, and within the

17   State of California (including the County of Orange), personal jurisdiction is

18   established, and Defendant Experian is headquartered in the County of Orange.

19   15. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because the acts and

20   transactions occurred here, Plaintiff resides in this judicial district, Defendants

21   transact business here, and because Experian is headquartered here.

22   **PARTIES**

23   16. Plaintiff is a natural person who at all relevant times alleged herein is a resident

24   of the County of Orange, State of California, from whom Defendants sought to

25   collect a fraudulent consumer "debt," which is alleged to be due and owing from

26   Plaintiff, as defined by Cal. Civ. Code § 1788.2(d) and 15 U.S.C. §1692a(5).

27   17. Such "debt" was the result of "identity theft" as defined by Cal. Civ. Code §

28   1798.92(b). Additionally, Plaintiff is a "debtor," as that term is defined by Cal.

Civ. Code § 1788.2(h). Plaintiff is also a "victim of identity theft" as that term is defined by Cal. Civ. Code § 1798.92(d).

18. Further, Plaintiff is a "consumer" as that term is defined by 15 U.S.C. §1692a(3) and 15 U.S.C. § 1681a(c); and is a "person" as defined by Cal. Civ. Code § 1788.2(g).

19. Upon information and belief, Capital One is a national banking association with its headquarters in McLean, Virginia, and corporate offices in San Francisco, California (among other states). Capital One is also a "claimant" as that term is defined by Cal. Civ. Code § 1798.92(a).

20. Capital One is also a furnisher of information as contemplated by FCRA sections 1681s-2(b), that regularly and in the ordinary course of business furnishes information to one or more consumer reporting agencies about consumer transactions or experiences with any consumer.

21. Upon information and belief, Nelson & Kennard is a law firm that primarily engages in debt collection, with its principal offices located in McClellan, California. It is also alleged that Nelson & Kennard is authorized to and regularly conducts business, including debt collection, within the State of California and within the County of Orange.

22. Nelson & Kennard regularly (and primarily in the course of its business) collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due. In doing so, Nelson & Kennard uses instrumentalities of interstate commerce and the mail for the principal purpose of collecting debts. Nelson & Kennard in the ordinary course of business, regularly, on behalf of itself and/or others, engages in "debt collection" as that term is defined by California Civil Code § 1788.2(b), and is therefore a "debt collector," as that term is defined by 15 U.S.C. §1692a(6) and Cal. Civ. Code §1788.2(c).

23. Upon information and belief, Experian is a California corporation operating from an address of 475 Anton Blvd., Costa Mesa, CA 92626, and is a "person" as

defined by 15 U.S.C. § 1681a(b).

24. Upon information and belief, Equifax is a limited liability company located in the State of Georgia and is a "person" as defined by 15 U.S.C. § 1681a(b).

25. Upon information and belief, Trans Union is a corporation located in the State of Illinois and is a "person" as defined by 15 U.S.C. § 1681a(b).

26. Equifax, Trans Union, and Experian are each a "consumer reporting agency" as that term is defined by 15 U.S.C. § 1681a(f) (Equifax, Trans Union, and Experian are collectively referred to as "Credit Reporting Agencies" or "CRAs").

27. This case involves Plaintiff's "consumer report" as that term is defined by 15 U.S.C. § 1681a(d)(1).

28. This action arises out of an alleged fraudulent "debt" as that term is defined by Cal. Civ. Code § 1788.2(d) that was incurred as a result of a "consumer credit transaction" as defined by Cal. Civ. Code § 1788.2(e).

29. This matter involves a "consumer credit transaction" i.e. a transaction between in which property or money was acquired on credit primarily for personal, family, or household purposes. *See* Cal. Civ. Code §§ 1788.2(e), 1788.2(f), 15 U.S.C. § 1692a(5), and 15 U.S.C § 1679a(2).

30. This case also involves money, property or their equivalent, due or owing or alleged to be due or owing from a natural person by reason of a consumer credit transaction. As such, this action arises out of a "consumer debt" and "consumer credit" as those terms are defined by 15 U.S.C. § 1692a(5) and Cal. Civ. Code § 1788.2(f).

## FACTUAL ALLEGATIONS

31. At all times relevant, Plaintiff is an individual, and a victim of identity theft, residing within the State of California.

32. Plaintiff is informed and believes, and thereon alleges, that at all times relevant, Defendants conducted and continue to conduct business in the State of California

and within this district.

33. In or around January of 2020, Plaintiff discovered for the first time that her identity had been stolen when she found out that a fraudulent AT&T account ending in 9280 was opened in Plaintiff's name by an unknown fraudster and without Plaintiff's knowledge or consent.

34. Upon finding out that her identity had been compromised, Plaintiff immediately disputed this account with AT&T.

35. After explaining the circumstances of the fraud to AT&T, Plaintiff was able to get the fraudulent AT&T account removed from her credit reports.

36. Indeed, in a written correspondence dated January 8, 2020, AT&T sent Plaintiff a letter stating, "AT&T has completed an investigation of the referenced account. AT&T has confirmed that the account was created without your authorization. AT&T has cancelled the unauthorized account and credits will be issued for any charges incurred."

37. Then, on or about April 10, 2021, Plaintiff received a written correspondence from ARS National Services Inc. attempting to collect a debt on behalf of original creditor JPMorgan Chase Bank, N.A. ("Chase") ending in account number 3247 ("Chase Account") for $26,584.60.

38. Plaintiff never opened or utilized this Chase Account and believed likely the same fraudster that opened the AT&T account opened this one as well without her knowledge or consent.

39. Plaintiff again immediately contacted Chase to dispute this fraudulent account.

40. Plaintiff was relieved when Chase too rightfully acknowledged that this account was fraudulent and removed it from her credit reports immediately.

41. After successfully having the Chase Account removed, Plaintiff was relieved as she believed that she had removed all the fraudulent accounts from her credit reports and was excited to put this terrible situation behind her.

42. However, Plaintiff was surprised to find out for the first time in or around July of

2021 that, *yet another* fraudulent account had been opened using her personal identifying information (as defined by Cal. Civ. Code § 1798.92(c)) and without Plaintiff's knowledge or consent. This time the account at issue was a Capital One account ending in 0392 (the "Account").

43. Indeed, in or around July of 2021, Plaintiff received a written communication from Nelson & Kennard dated July 13, 2021, attempting to collect on the fraudulent Account on behalf of Capital One.

44. The first time Plaintiff became aware of the Account's existence was upon reviewing this July 13, 2021 debt collection letter.

45. In that July 13, 2021 letter, Nelson & Kennard stated that it represented Capital One regarding the Account and that Nelson & Kennard "is a debt collector attempting to collect a debt."

46. Prior to July 13, 2021, Plaintiff did not receive any written communications, debt collection letters, or bank statements concerning the Account.

47. Plaintiff was also unaware of the full Account number as the only communication Plaintiff received regarding this Account prior to July 2021 was this July 13, 2021 letter.

48. Simply put, Plaintiff never received any of the credit card statements in the mail, never made payments on the Account, and did not otherwise utilize or benefit from the Account in any way.

49. Plaintiff was frustrated and confused as to how another account was opened in her name and using her personal information.

50. However, as she had done with the Chase and AT&T accounts, Plaintiff immediately contacted Nelson & Kennard to dispute the Account as belonging to Plaintiff.

51. Indeed, on or about July 16, 2021, at approximately 9:42 a.m., Plaintiff's son, emailed Nelson & Kennard on her behalf informing Nelson & Kennard and Capital One that the Account was a result of "fraudulent criminal activity." No

response was received.

52. On or about August 23, 2021, Plaintiff received another written debt collection letter from Nelson & Kennard on behalf of Capital One again seeking to collect on the Account.

53. On August 28, 2021, at approximately 8:45 a.m., Plaintiff again emailed Nelson & Kennard indicating for a second time in writing that the Account was fraudulent, and this time Plaintiff expressly noted that "Capital One should be and is aware of the fraud status of the associated account."

54. During this time, Plaintiff (with the assistance of her children due to a language barrier) even went to one of Capital One's physical locations in Irvine, California to dispute the Account in-person.

55. Plaintiff also requested that Capital One provide the full account number and associated documents concerning the Account's opening, which Capital One refused to do. Rather, Capital One, through its counsel of record Nelson & Kennard, merely sent Plaintiff copies of the monthly credit card statements pertaining to the Capital One Account. Upon receiving and reviewing such statements, Plaintiff confirmed that none of these statements were previously sent to her.

56. Instead, Capital One simply sent Plaintiff to the fraud department who failed to adequately investigate Plaintiff's claims.

57. Plaintiff also contacted Nelson & Kennard on numerous occasions asking for the Account number and Account application, but too was denied such information.

58. Eventually, Plaintiff obtained the email address associated with the Account, which Plaintiff immediately noticed *was not her email address*. Indeed, while Plaintiff was at one of Capital One's physical locations in Irvine, she saw the email address on file when a Capital One employee pulled up the Account. Plaintiff pressed Capital One for more information, but such requests fell on deaf ears. Capital One simply provided Plaintiff with the phone number for Capital

COMPLAINT FOR DAMAGES

One's Fraud department.

59. Despite Plaintiff's repeated attempts to dispute the Account, on October 27, 2021, Capital One through its counsel, Nelson & Kennard, filed a Complaint in the Superior Court of California, County of Orange seeking to collect on the fraudulent Account (the "Debt Collection Lawsuit").

60. On or about November 3, 2021, Plaintiff was served with the Debt Collection Lawsuit, which understandably caused Plaintiff great distress as she was now forced to hire legal counsel to defend a frivolous lawsuit (and incur attorneys fees and costs).

61. On December 18, 2021, Plaintiff filed a police report with the Tustin Police Department regarding this fraudulent Account (the "Police Report").

62. Then, on January 27, 2022, Plaintiff also submitted an Identity Theft Report with the Federal Trade Commission (the "Fraud Affidavit") describing the circumstance of the fraudulent Account.

63. Sometime in or around February of 2022, Plaintiff retained counsel who provided Nelson & Kennard and Capital One with a copy of the Police Report and Fraud Affidavit.

64. On March 14, 2022, Capital One sent Plaintiff, through her counsel, a letter regarding the outcome of its fraud investigations. The letter stated in part, "We've finished our investigation of your fraud claim. Our research found no signs of fraud."

65. Upon receiving this letter, Plaintiff was distraught and frustrated that Capital One and Nelson & Kennard were still holding her liable for this a fraudulent debt.

66. Even worse, Capital One and Nelson & Kennard refused to drop the Debt Collection Lawsuit, which resulted in Plaintiff having to incur court costs (of about $270) when she filed an Answer on or about May 10, 2022 in order to protect her rights.

67. During June of 2022, Plaintiff pulled her credit reports and found out for the first time that the fraudulent Account was being reported to her Experian, Equifax, and Trans Union credit reports.

68. The Capital One Account immediately stood out to Plaintiff upon review of her credit reports since all other tradelines were in good standing, apart from the Account which was being reported as over 120 days late and charged off with a balance of about $6,163.

69. On or about August 31, 2022, Plaintiff mailed written disputes via certified mail return receipt requested dated August 17, 2022 regarding the Account to: Capital One, Experian, Equifax, and Trans Union.

70. The August 17, 2022 written dispute contained: (1) a two-page detailed narrative concerning the circumstance of the fraud; (2) Plaintiff's identifying information; (3) Plaintiff's driver's license; (4) a copy of Plaintiff's credit report; (5) the Police Report and Identity Theft Affidavit; and (6) a signature sample.

71. Defendants each received a copy of Plaintiff's August 17, 2022 written dispute by about September 6, 2022.

72. On September 8, 2022, Capital One sent Plaintiff a written communication requesting additional documents in order to "research [her] request."

73. Plaintiff timely complied with Capital One's request for information and provided the additional documents (which were mailed via certified mail on October 1, 2022 and received by Capital One on October 5, 2022).

74. On October 13, 2022, Capital One send Plaintiff a written response to her August 17, 2022 dispute again rejecting her fraud claim and noting, "We've finished our investigation of your fraud claim . . . and found no signs of fraud."

75. Similarly, on September 7, 2022, Equifax sent Plaintiff a written communication requesting additional documents.

76. On October 1, 2022, Plaintiff mailed Equifax the requested documents, which were received by Equifax on October 7, 2022.

77. On September 9, 2022 and November 29, 2022, Trans Union sent Plaintiff a written communications requesting additional documents, which Plaintiff mailed to Trans Union on November 15, 2022 and were received on November 21, 2022.[1] In an abundance of caution, Plaintiff also mailed further documents to Trans Union on February 8, 2023, which were received by Trans Union on February 11, 2023.

78. On November 17, 2022, Nelson & Kennard on behalf of Capital One served Plaintiff with formal written discovery requests in the Debt Collection Lawsuit.

79. Plaintiff timely provided written responses to these discovery requests on December 30, 2022 expressing the circumstances of the fraud through verified discovery responses (which included Plaintiff producing supporting documents such as (1) the August 17, 2022 written dispute to Capital One, (2) Plaintiff's credit report, (3) the Police Report and Fraud Affidavit, (4) Plaintiff's signature sample, (5) Plaintiff's driver's license, (6) the July and August 2021 email communications between Plaintiff and Nelson & Kennard, and (7) Plaintiff's response to Capital One's request for more information sent on October 1, 2022 by Plaintiff).

80. On January 12, 2023, Capital One sent Plaintiff a written correspondence again indicating that there was "no signs of fraud."

81. On or about February 11, 2023, Plaintiff sent a second written dispute via certified mail return receipt requested dated February 10, 2023 regarding the Account to: Capital One, Experian, Equifax, and Trans Union.

82. This February 2023 dispute was received by Capital One, Experian, Equifax, and Trans Union by about February 17, 2023.

83. The February 2023 written dispute again contained: (1) a two-page detailed

---

[1] Plaintiff attempted to mail the requested documents to Trans Union on or around November 7, 2022, but the documents were returned as undeliverable, which prompted Plaintiff to remail the documents on November 15, 2022.

narrative concerning the circumstance of the fraud; (2) Plaintiff's identifying information and current address; (3) Plaintiff's driver's license; (4) a copy of Plaintiff's credit report; (5) the Police Report and Identity Theft Affidavit; and (6) a signature sample.

84. On February 24, 2023, Equifax sent Plaintiff a written communication again asking for more documents–specifically, proof of identification and current address.

85. Plaintiff was frustrated and confused by this request from Equifax because Plaintiff *had already sent Equifax a copy of her driver's license and social security* card in October of 2022, and Plaintiff sent an additional dispute on February 10, 2023, containing again her driver's license, credit report, address and signature sample.

86. On February 15, 2023 and February 20, 2023, Trans Union sent Plaintiff written correspondence indicating that it would not be deleting the fraudulent Capital One Account.

87. On February 24, 2023, Trans Union sent another written response to Plaintiff's February 2023 written dispute this time indicating that the fraudulent Capital One Account was deleted from Plaintiff's Trans Union credit report.

88. However, Plaintiff reviewed her credit reports as of April 2023, and was shocked and disheartened to find out that Trans Union was indeed still reporting the fraudulent Capital One Account to Plaintiff's Trans Union credit report.

89. Plaintiff has not received a response to *any* of the disputes from Experian.

90. As of April 2023, and, upon information and belief, continuing to this day, Defendants Experian, Trans Union, and Equifax continue to report the fraudulent Capital One Account to Plaintiff's credit reports, which is patently inaccurate.

91. As a result, from at least June of 2022 (and likely prior thereto as it is Plaintiff's understanding the Account was opened by a fraudster in October of 2019) through the present the fraudulent Capital One Account has been erroneously

1    reporting to Plaintiff's credit reports.

2    92. Just as recently as April 12, 2023, Capital One sent yet another letter rejecting

3    Plaintiff's fraud claim.

4    93. Similarly, on April 16, 2023, Equifax sent Plaintiff a written communication

5    stating:

> As a result of a dispute you submitted, the account listed below was removed from your Equifax credit file. The company that furnished the account information recently requested to have the account information reinserted on your Equifax credit file and submitted a certification that the account belongs to you and the information below is complete and accurate. As a result and based on this certification, Equifax has reinserted the account on your Equifax credit file, as reported to us by the company.

94. As the data furnisher for Plaintiff's account, Capital One has control over the status of Plaintiff's Account, including suppression and permanently deleting the Account at issue, yet, upon information and belief, it has failed to do so.

95. Similarly, each of the CRAs has a duty to reasonably investigate Plaintiff's written disputes, which was clearly not done here. Upon information and belief, as of the date of the filing of this Complaint, the Account is being reported by all three of the CRAs.

96. As of May of 2023, Plaintiff is still also being wrongly prosecuted for the Account as the Debt Collection Lawsuit remains active and Plaintiff continues to incur associated attorneys' fees and costs in defending that suit.

97. Nelson & Kennard continues to engage in debt collection practices through the present day by, at a minimum, engaging in discovery and the prosecution of a frivolous lawsuit despite being on notice that the Account does not belong to Plaintiff.

98. The harm caused by Defendants is continuing through the present day. Just as recently as May 1, 2023, Plaintiff was denied a Macy's credit card at a Macy's location in Brea, California, resulting in Plaintiff feeling embarrassed, scared,

1     ashamed and hopeless that she might never get this situation resolved.

2   99. On information and belief, Capital One has not taken affirmative steps to

3       suppress the reporting of the Capital One Account to Plaintiff's credit reports.

4   100. Through this conduct, Capital One has violated Cal. Civ. Code 1785.25(a) by

5       furnishing information to consumer reporting agencies that Capital One knew or

6       should know was inaccurate.

7   101. Upon information and belief, Capital One submitted inaccurate credit

8       information regarding Plaintiff to Trans Union, Experian and Equifax every

9       thirty days during the period of, at least, June 2022 through the present.

10   102. Accordingly, Capital One willfully and negligently failed to comply with

11       Capital One's duties to reasonably investigate Plaintiff's dispute and to update

12       the reporting of Plaintiff's Account accurately by permanently removing,

13       blocking and/or suppressing the fraudulent account from Plaintiff's credit

14       reports.

15   103. Capital One's inaccurate and negative reporting damaged Plaintiff's

16       creditworthiness and has affected Plaintiff negatively due to the misleading

17       nature of Capital One's inaccurate credit reporting regarding the fraudulent debt.

18   104. Plaintiff had to incur, and is still incurring, out of pocket expenses, including

19       attorneys' fees and costs, to defend a frivolous lawsuit for a year and a half.

20   105. Such damages are likely to continue to incur unless Capital One is enjoined

21       from prosecuting Plaintiff for an account that does not belong to her and Capital

22       One is ordered to declare Plaintiff's lack of liability to as to the Account at issue

23       pursuant Cal. Civ. Code §§ 1798.93(c)(1)-(2).

24   106. As a result of the actions alleged herein, the Credit Bureaus also failed to

25       conduct a reasonable investigation with respect to the disputed information as

26       required by 15 U.S.C. §1681i.

27   107. Plaintiff's continued efforts to correct Defendants' erroneous and negative

28       reporting by communicating Plaintiff's dispute with the Credit Bureaus were

fruitless.

108. Defendants' continued inaccurate and negative reporting of the inaccurate information to Plaintiff's credit report in light of Defendants' knowledge of the actual error was willful.

109. Defendants' continued inaccurate and negative reporting of the inaccurate information to Plaintiff's credit report in light of Defendants' knowledge of the actual error was reckless.

110. Defendants' failure to correct the inaccuracies on Plaintiff's credit reports was intentional and in reckless disregard of Defendants' duty to refrain from reporting inaccurate information.

111. Accordingly, Defendants willfully and negligently failed to comply with Defendants' respective duties to reasonably investigate Plaintiff's dispute.

112. Defendants' inaccurate and negative reporting damaged Plaintiff's creditworthiness.

113. Defendants' conduct alleged herein has also caused Plaintiff emotional distress that continues until the present day as the Debt Defense Lawsuit is still active and pending and the Account continues to be reported to Plaintiff's credit reports.

114. Plaintiff has spent countless hours disputing this inaccurate information without success.

115. Plaintiff's anxiety, frustration, stress, lack of sleep, nervousness, anger, and, embarrassment continues to this day because the inaccurate reporting of the Account mischaracterizes Plaintiff as someone that avoids Plaintiff's financial obligations and significantly harms Plaintiff's credit score that is otherwise in good standing despite the delinquent fraudulent Account that does not belong to Plaintiff.

116. Despite Plaintiff's repeated attempts, Defendants continue to engage in collection activates and inaccurately report the Account to Plaintiff's credit

reports through the present.

117. As a direct and proximate result of Defendants' willful action and inaction, Plaintiff has suffered actual damages, including, but not limited to, reviewing credit reports, attorneys' fees, loss of credit, loss of ability to purchase and benefit from credit, increased costs for credit, mental and emotional pain and anguish, and humiliation and embarrassment of credit denials. Plaintiff has further spent countless hours and suffered pecuniary loss in attempting to correct Defendants' inaccurate and derogatory information, without success.

118. Indeed, Plaintiff was denied a Macy's credit card as a result of the inaccurate information on her credit reports.

119. Plaintiff also has refrained from utilizing her credit for fear of future denials.

120. Based upon the discussion above, Plaintiff contends that punitive damages are available to Plaintiff.

121. By intentionally reporting inaccurate information, Defendants acted in conscious disregard for Plaintiff's rights.

122. Since Plaintiff's efforts to correct her credit report and dismiss the Debt Collection Lawsuit were unsuccessful, Plaintiff was required to bring this action to finally resolve Plaintiff's remaining disputes.

123. Plaintiff's anxiety; frustration; stress; lack of sleep; nervousness; anger; and, embarrassment continues to this day because this Debt Collection Lawsuit mischaracterizes Plaintiff as someone that avoids Plaintiff's financial obligations, when in fact Plaintiff is a victim of identity theft.

124. Through this conduct, Defendants Capital One and Nelson & Kennard violated 15 U.S.C. § 1692e by using false, deceptive, and misleading representations in connection with the collection of the alleged debt. This section is incorporated into the RFDCPA through Cal. Civ. Code § 1788.17; thus, Defendants violated Cal. Civ. Code § 1788.17.

125. Through this conduct, Defendants violated 15 U.S.C. § 1692e(2)(A) by falsely

representing the character, amount, and legal status of the debt in connection with the collection of the alleged debt. This section is incorporated into the RFDCPA through Cal. Civ. Code § 1788.17; thus, Defendants violated Cal. Civ. Code § 1788.17.

126. Through this conduct, Defendants violated 15 U.S.C. § 1692e(10) by using false representations and deceptive means to collect Plaintiff's alleged debt. This section is incorporated into the RFDCPA through Cal. Civ. Code § 1788.17; thus, Defendants violated Cal. Civ. Code § 1788.17.

127. Through this conduct, Defendants violated 15 U.S.C. § 1692f by using unfair and unconscionable means to collect the alleged debt. This section is incorporated into the RFDCPA through Cal. Civ. Code § 1788.17; thus, Defendants violated Cal. Civ. Code § 1788.17.

128. Plaintiff was additionally forced to defend a frivolous lawsuit for nearly a year and a half. As a result, Plaintiff incurred significant fees and costs which could have been avoided had Defendants Capital One and Nelson & Kennard honored her fraud claim and ceased collection efforts immediately upon notice.

129. Capital One's refusal to honor Plaintiff's fraud claim within 30 days of receiving such written notice is in violation of Cal. Civ. Code § 1798.92.

## ACTUAL DAMAGES

130. As a result of Defendants' actions, omissions, and willful action and inaction, Plaintiff has suffered damage by loss of credit, loss of ability to purchase and benefit from credit, increased costs for credit, invasion of privacy, personal embarrassment, loss of personal reputation, loss of productive time, nausea, and feelings of fear, anxiety, hopelessness, anger, persecution, emotional distress, frustration, upset, humiliation, and embarrassment, amongst other negative emotions.

131. Plaintiff has suffered pecuniary loss in attempting to correct Defendants' reporting of inaccurate and derogatory information, without success, including

COMPLAINT FOR DAMAGES

but not limited to time loss, charges for cellular phone usage, costs for Plaintiff's daughter to travel to California to assist with the dispute process, court costs and attorneys' fees, and costs of mailing the disputes.

132. Plaintiff's injuries are concrete. Defendants' conduct of reporting inaccurate and derogatory information is analogous to the common law tort of defamation.

133. Furthermore, the Legislature enacted the FCRA to protect consumers from precisely the conduct described in this Complaint. The banking system is dependent upon fair and accurate credit reporting; and inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence, which is essential to the continued functioning of the banking system.

134. Consequently, the FCRA was enacted to insure fair and accurate reporting, promote efficiency in the banking system and protect consumer privacy; and to ensure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy because consumer reporting agencies have assumed such a vital role in assembling and evaluating consumer credit and other information on consumers.

135. The alleged transgressions by Defendants would, if left unchecked in a competitive marketplace, naturally propagate had the Legislature not created laws to give vulnerable consumers a voice and a mechanism for private enforcement.

## CAUSES OF ACTION CLAIMED BY PLAINTIFF

### COUNT I
### VIOLATION OF THE FAIR CREDIT REPORTING ACT
### 15 U.S.C. § 1681C-2(A)

### [AS TO EXPERIAN, TRANS UNION AND EQUIFAX]

136. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

137. Defendant Experian, Trans Union, and Equifax violated 15 U.S.C. §1681c-2(a)

when they each failed to block the reporting of information in Plaintiff's consumer file that Plaintiff identified as having resulted from an alleged identity theft within 4 days of receipt of proof of identity, ID theft report, identification of the ID theft related information, and a statement from Plaintiff that the information is not related to any transaction made by Plaintiff.

138. In August of 2022 and February of 2023, Plaintiff sent, via certified mail, an Identity Theft Notification to Defendant Experian, Trans Union, and Equifax, which included Plaintiff's name, SSN, address, date of birth, a statement that the entire balance associated with the Capital One Account ending in 0392 was a fraudulent account incurred because of identity theft, a Police Report regarding the identity theft, as well as a detailed Fraud Affidavit explaining the circumstances of the fraud.

139. Experian received Plaintiff's written disputes on September 3, 2022 and February 16, 2023.

140. Trans Union received Plaintiff's written disputes on September 2, 2022 and February 15, 2023.

141. Equifax received Plaintiff's written disputes September 3, 2022 and February 17, 2023.

142. Upon information and belief, as of April 4, 2023, Defendants' credit reports for Plaintiff still showed the Capital One Account ending in 0392 in its entirety, with the full fraudulent balance (including 120-day delinquency).

143. As a result of the conduct, actions and inactions of Defendants Plaintiff suffered actual damages including without limitation, by example only and as described herein: loss of credit, damage to reputation, embarrassment, humiliation and other mental and emotional distress.

144. The conduct, actions and inactions by Defendants were willful, rendering Defendants liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n. In the alternative Defendants were at a

minimum negligent entitling the Plaintiff to recover under 15 U.S.C. §1681o.

145. Plaintiff is entitled to recover actual damages, statutory damages, costs and attorney's fees from Defendants in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n and §1681o.

## COUNT II
### VIOLATION OF THE FAIR CREDIT REPORTING ACT
### 15 U.S.C. § 1681E(B)
### [AS TO EXPERIAN, TRANS UNION AND EQUIFAX]

146. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

147. Defendants violated 15 U.S.C. §1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the Plaintiff's credit reports and credit files it published and maintains concerning the Plaintiff.

148. As a result of the conduct, actions and inactions of Defendants, Plaintiff suffered actual damages including without limitation, by example only and as described herein on Plaintiff's behalf by counsel: loss of credit, damage to reputation, embarrassment, humiliation and other mental and emotional distress.

149. The conduct, actions and inactions by Defendants was willful, rendering Defendants liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n. In the alternative, Defendants were at a minimum negligent entitling Plaintiff to recover under 15 U.S.C. §1681o.

150. Plaintiff is entitled to recover actual damages, statutory damages, costs and attorney's fees from Defendants in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n and §1681o.

## COUNT III
### VIOLATION OF THE FAIR CREDIT REPORTING ACT
### 15 U.S.C. § 1681I(A)(1)
### [AS TO EXPERIAN, TRANS UNION AND EQUIFAX]

151. Plaintiff incorporates by reference all of the above paragraphs of this Complaint

as though fully stated herein.

152. Defendants violated 15 U.S.C. §1681i(a)(l) on multiple occasions by failing to conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information or delete the item from the Plaintiff's credit files.

153. As a result of the conduct, actions and inactions of Defendants Plaintiff suffered actual damages including without limitation, by example only and as described herein on Plaintiff's behalf by counsel: loss of credit, damage to reputation, embarrassment, humiliation and other mental and emotional distress.

154. The conduct, actions and inactions by Defendants was willful, rendering Defendants liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n. In the alternative, Defendants were negligent entitling Plaintiff to recover under 15 U.S.C. §1681o.

155. Plaintiff is entitled to recover actual damages, statutory damages, costs and attorney's fees from Defendants in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n and §1681o.

### COUNT IV
### VIOLATION OF THE FAIR CREDIT REPORTING ACT
### 15 U.S.C. § 1681I(A)(4)
### [AS TO EXPERIAN, TRANS UNION AND EQUIFAX]

156. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

157. Defendants violated 15 U.S.C. §1681i(a)(4) on multiple occasions by failing to review and consider all relevant information submitted by Plaintiff.

158. As a result of the conduct, actions and inactions of Defendants Plaintiff suffered actual damages including without limitation, by example only and as described herein on Plaintiff's behalf by counsel: loss of credit, damage to reputation, embarrassment, humiliation and other mental and emotional distress.

159. The conduct, actions and inactions by Defendants was willful, rendering

Defendants liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n. In the alternative, Defendants were negligent entitling the Plaintiff to recover under 15 U.S.C. §1681o.

160. The Plaintiff is entitled to recover actual damages, statutory damages, costs and attorney's fees from Defendants in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n and §1681o.

## COUNT V
### VIOLATION OF THE FAIR CREDIT REPORTING ACT
### 15 U.S.C. § 1681I(A)(5)(A)
### [AS TO EXPERIAN, TRANS UNION AND EQUIFAX]

161. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

162. Defendants violated 15 U.S.C. §1681i(a)(5)(A) on multiple occasions by failing to promptly delete the disputed inaccurate item of information from Plaintiff's credit file or modify the item of information upon an accurate reinvestigation.

163. As a result of the conduct, actions and inactions of Defendants, Plaintiff suffered actual damages including without limitation, by example only and as described herein on Plaintiff's behalf by counsel: loss of credit, damage to reputation, embarrassment, humiliation and other mental and emotional distress.

164. The conduct, actions and inactions by Defendants was willful, rendering Defendants liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n. In the alternative, Defendants were negligent entitling the Plaintiff to recover under 15 U.S.C. §1681o.

165. The Plaintiff is entitled to recover actual damages, statutory damages, costs and attorney's fees from Defendants in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n and §1681o.

//

//

COMPLAINT FOR DAMAGES

## COUNT VI
### VIOLATION OF THE FAIR CREDIT REPORTING ACT
### 15 U.S.C. § 1681s-2(B)(1)(A)
### [AS TO CAPITAL ONE]

166. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

167. Capital One was required to conduct a reasonable investigation into the disputed account on Plaintiff's consumer report pursuant to 15 U.SC. § 1681s-2(b)(1)(A).

168. Capital One violated 15 U.SC. § 1681s-2(b)(1)(A) on multiple occasions by failing to conduct a reasonable investigation to determine whether the disputed information is inaccurate and record the current status of the disputed information or request the item to be permanently deleted Plaintiff's credit files.

169. Accordingly, Capital One failed to conduct a reasonable investigation with respect to the disputed information as required by 15 U.SC. § 1681s- 2(b)(1)(A) by failing to remove all of the disputed and incorrect information.

170. As a result of the conduct, actions and inactions of Capital One, Plaintiff suffered actual damages including without limitation, by example only and as described herein on Plaintiff's behalf by counsel: loss of credit, damage to reputation, embarrassment, humiliation and other mental and emotional distress.

171. The conduct, actions and inactions by Capital One were willful, rendering Capital One liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n. In the alternative, Capital One was negligent entitling the Plaintiff to recover under 15 U.S.C. §1681o.

172. The Plaintiff is entitled to recover actual damages, statutory damages, costs and attorney's fees from Capital One in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n and §1681o.

//
//

## COUNT VII
### VIOLATION OF THE FAIR CREDIT REPORTING ACT
### 15 U.SC. § 1681S-2(B)(1)(B)
### [AS TO CAPITAL ONE]

173. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

174. Capital One violated 15 U.SC. § 1681-2(b)(1)(B) on multiple occasions by failing to review all relevant information provided by Plaintiff in the disputes to the Credit Bureaus and to Capital One.

175. As a result of the conduct, actions and inactions of Capital One, Plaintiff suffered actual damages including without limitation, by example only and as described herein on Plaintiff's behalf by counsel: loss of credit, damage to reputation, embarrassment, humiliation, and other mental and emotional distress.

176. The conduct, actions and inactions by Capital One were willful, rendering Capital One liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n.

177. In the alternative, Capital One was negligent entitling the Plaintiff to recover under 15 U.S.C. §1681o.

178. The Plaintiff is entitled to recover actual damages, statutory damages, costs and attorney's fees from Capital One in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n and §1681o.

## COUNT VIII
### VIOLATION OF THE FAIR CREDIT REPORTING ACT
### 15 U.SC. § 1681S-2(B)(1)(C)-(E)
### [AS TO CAPITAL ONE]

179. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

180. Due to Capital One's failure to reasonably investigate, Capital One further failed to correct and update Plaintiff's information as required by 15 U.S.C. § 1681-2(b)(1)(E), thereby causing continued reporting of inaccurate information in violation of 15 U.S.C. § 1681-s(2)(b)(1)(C).

181. By inaccurately reporting account information after notice and confirmation of its errors, Capital One failed to take appropriate measures as required by 15 U.S.C. § 1681s-2(b)(1)(D); and, (E).

182. The conduct, actions and inactions by Capital One were willful, rendering Capital One liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n.

183. In the alternative, Capital One was negligent entitling the Plaintiff to recover under 15 U.S.C. §1681o.

184. The Plaintiff is entitled to recover actual damages, statutory damages, costs and attorney's fees from Capital One in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n and §1681o.

## COUNT IX
### VIOLATION OF THE CALIFORNIA CONSUMER CREDIT REPORTING AGENCIES ACT CAL. CIV. CODE § 1785.1, *ET SEQ.*
### [AS TO CAPITAL ONE]

185. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

186. The foregoing acts and omissions constitute numerous and multiple violations of the California Consumer Credit Reporting Agencies Act.

187. In the regular course of its business operations, Capital One routinely furnishes information to credit reporting agencies pertaining to transactions between Capital One and Capital One's consumers, thereby providing information to the credit reporting agencies regarding a consumer's credit worthiness, credit standing and credit capacity.

188. Because Capital One is a partnership, corporation, association, or other entity, and are therefore each a "person" as that term is defined by Cal. Civ. Code § 1785.3(j), Capital One is and always was obligated to not furnish information on a specific transaction or experience to any consumer credit reporting agency if the person knows or should have known that the information is incomplete or

COMPLAINT FOR DAMAGES

inaccurate, as required by Cal. Civ. Code § 1785.25(a).

189. Capital One should have determined that its reporting was inaccurate through review of Capital One's own account notes and records. This is especially true since Plaintiff provided multiple written disputes and provided verified discovery responses in the Debt Collection Lawsuit attesting to the fraudulent nature of the Account.

190. However, despite this knowledge of Plaintiff's identity theft and that the account was opened fraudulently, Capital One continued to report the inaccurate Capital One account to Plaintiff's credit reports.

191. As a result of the willful, negligent, and/or reckless actions and inactions of Capital One, Plaintiff suffered actual damages including without limitation, by example only and as described herein on Plaintiff's behalf by counsel: loss of credit, damage to reputation, embarrassment, humiliation and other mental and emotional distress.

## COUNT X
### VIOLATIONS OF CALIFORNIA'S IDENTITY THEFT ACT
### CAL. CIV. CODE § 1798.92-1798.97
### [AS TO CAPITAL ONE]

192. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

193. The foregoing acts and omissions constitute numerous and multiple violations of the Cal. Civ. Code § 1798.92, *et seq*., including but not limited to each and every one of the above-cited provisions of Cal. Civ. Code § 1798.92.

194. As alleged herein, Plaintiff first became aware that her identity was stolen in regard to the Capital One Account when she received a written debt collection letter from Nelson & Kennard on or about July 14, 2021.

195. Prior to bringing this action, Plaintiff sent a copy of the Police Report and Fraud Affidavit to Capital One on multiple occasions informally during 2022, and even submitted formal written disputes to Capital One in August of 2022

and February of 2023, in which Plaintiff attached a copy of such Police Report. Lastly, the Police Report was provided to Capital One via Plaintiff's written discovery responses in the Debt Collection Lawsuit.

196. However, Capital One's collection activity continued after the thirty-day period following the receipt of Plaintiff's Police Report. Indeed, Capital One was on written notice of the fraud claim and had a copy of the Police Report since at least 2021.

197. As a result of each and every violation of Cal. Civ. Code § 1798.92, Plaintiff is entitled to any actual damages pursuant to Cal. Civ. Code § 1798.93(c)(5); a civil penalty in an amount up to $30,000.00 pursuant to Cal. Civ. Code § 1798.93(c)(6); costs pursuant to Cal. Civ. Code § 1798.93(c)(5), attorney's fees and costs pursuant to Cal. Civ. Code § 1798.93(c)(5) and any equitable relief the Court deems appropriate pursuant to Cal. Civ. Code § 1798.93(c)(5).

## COUNT XI
### VIOLATION OF THE FAIR DEBT COLLECTION PRACTICES ACT
### 15 U.S.C. §§ 1692 *ET SEQ.*
### [AS TO NELSON & KENNARD]

198. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

199. The foregoing acts and omissions constitute numerous and multiple violations of the FDCPA, including but not limited to each and every one of the above cited provisions of the FDCPA, 15 U.S.C. § 1692, *et seq*.

200. Defendant Nelson & Kennard engaged in debt collection activity concerning the fraudulent Capital One Account through at least April of 2023. Indeed, presently the Debt Collection Lawsuit remains pending and active.

201. As a result of each and every violation of the FDCPA, Plaintiff is entitled to any actual damages pursuant to 15 U.S.C. §1692k(a)(1); statutory damages in an amount up to $1,000.000 pursuant to 15 U.S.C. §1692k(a)(2)(A); and, reasonable attorney's fees and costs pursuant to 15 U.S.C. §1692k(a)(3).

**COUNT XII**
**VIOLATION OF THE FAIR DEBT COLLECTION PRACTICES ACT**
**15 U.S.C. §§ 1692 *ET SEQ.***
**[AS TO CAPITAL ONE AND NELSON & KENNARD]**

202. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

203. The foregoing acts and omissions constitute numerous and multiple violations of the Rosenthal Act, including but not limited to each and every one of the above-cited provisions of the Rosenthal Act, Cal. Civ. Code §§ 1788-1788.32.

204. Defendants Capital One and Nelson & Kennard engaged in debt collection activity concerning the fraudulent Capital One Account through at least April of 2023. Indeed, presently the Debt Collection Lawsuit remains pending and active.

205. As a result of each and every violation of the Rosenthal Act, Plaintiff is entitled to any actual damages pursuant to Cal. Civ. Code §1788.30(a); statutory damages for knowing or willful violation in the amount of $1,000.00 pursuant to Cal. Civ. Code §1788.30(b); and reasonable attorney's fees and costs pursuant to Cal. Civ. Code §1788.30, from each Defendant.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays that judgment be entered against each Defendant for:

**FIRST CAUSE OF ACTION**
**FAIR CREDIT REPORTING ACT,**
**15 U.S.C. §§ 1681, *ET SEQ.***
**[AS TO EXPERIAN, TRANS UNION, EQUIFAX AND CAPITAL ONE]**

- An award of actual damages, in an amount to be determined at trial or damages of a maximum of $1,000 pursuant to 15 U.S.C. § 1681n(a)(1)(A), against each Defendant for each incident of willful noncompliance of the FCRA;

- An award of actual damages in an amount to be determined at trial pursuant to 15 U.S.C. § 1681o(a)(1) against Defendant for each incident of negligent noncompliance of the FCRA;

- Statutory damages;

COMPLAINT FOR DAMAGES

- Punitive damages according to proof as to the FCRA, including, an award of punitive damages, as the Court may allow pursuant to 15 U.S.C. § 1681n and/or § 1681o, against each Defendant for each incident of willful noncompliance to the FCRA;

- Costs and reasonable attorney's fees pursuant to 15 U.S.C. §§ 1681n, and 1681o;

- An order directing that Defendants immediately delete all of the inaccurate information from Plaintiff's credit reports and files and cease reporting the inaccurate information to any and all persons and entities to whom they report consumer credit information;

- An order directing that Defendants send to all persons and entities to whom they have reported Plaintiff's inaccurate information within the last three years Plaintiff's updated and corrected credit report information; and,

- Any and all other relief the Court deems just and proper.

### SECOND CAUSE OF ACTION
### CALIFORNIA CONSUMER CREDIT REPORTING AGENCIES ACT,
### CAL. CIV. CODE § 1785.1, *ET SEQ.*
### [AS TO CAPITAL ONE]

- Actual damages, including court costs, loss of wages, and pain and suffering pursuant to Cal. Civ. Code § 1785.31(a);

- Costs and reasonable attorney's fees pursuant to Cal. Civ. Code § 1785.31(a)(1); and, Cal. Civ. Code § 1785.31(d);

- Punitive damages according to proof as to the CCCRAA, including an award of punitive damages of $100-$5,000 per willful violation of Cal. Civ. Code § 1785.25(a), pursuant to Cal. Civ. Code § 1785.31(a)(2)(B);

- Equitable and injunctive relief pursuant to Cal. Civ. Code § 1785.31(b);

- An order directing that Defendant immediately delete all of the inaccurate information from Plaintiff's credit reports and files and cease reporting the

COMPLAINT FOR DAMAGES

inaccurate information to any and all persons and entities to whom they report consumer credit information;

- An order directing that Defendant send to all persons and entities to whom they have reported Plaintiff's inaccurate information within the last three years Plaintiff's updated and corrected credit report information; and

- Any and all other relief the Court deems just and proper.

### THIRD CAUSE OF ACTION
### CALIFORNIA IDENTITY THEFT ACT,
### CAL. CIV. CODE § 1798.92, *ET SEQ.*
### [AS TO CAPITAL ONE]

- An award of actual damages, in an amount to be determined at trial, pursuant to Cal. Civ. Code § 1798.93(c)(5);

- A civil penalty of $30,000 pursuant to Cal. Civ. Code § 1798.93(c)(6);

- A declaration regarding Plaintiff's lack of liability to the claimants pursuant Cal. Civ. Code §§ 1798.93(c)(1)-(2);

- An injunction regarding claimants pursuant Cal. Civ. Code § 1798.93(c)(3); and,

- Any and all other relief the Court deems just and proper.

### FOURTH CAUSE OF ACTION
### FAIR DEBT COLLECTION PRACTICES ACT
### 15 U.S.C. § 1692, *ET SEQ.*
### [AS TO NELSON & KENNARD]

- An award of actual damages pursuant to 15 U.S.C. § 1692k(a)(1);

- An award of statutory damages of $1,000.00 pursuant to 15 U.S.C. § 1692k(a)(2)(A);

- An award of costs of litigation and reasonable attorney's fees, pursuant to 15 U.S.C. § 1692k(a)(3); and,

- Any and all other relief the Court deems just and proper.

COMPLAINT FOR DAMAGES

**FIFTH CAUSE OF ACTION**
**ROSENTHAL FAIR DEBT COLLECTION PRACTICES ACT,**
**CAL. CIV. CODE § 1788, *ET SEQ.***
**[AS TO CAPITAL ONE AND NELSON & KENNARD]**

- An award of actual damages pursuant to California Civil Code § 1788.30(a) against each Defendant;

- An award of statutory damages of $1,000.00 pursuant to Cal. Civ. Code § 1788.30(b) against each Defendant;

- An award of costs of litigation and reasonable attorney's fees, pursuant to Cal. Civ. Code § 1788.30(c) against each Defendant; and

- Any and all other relief the Court deems just and proper.

**TRIAL BY JURY IS DEMANDED**

206. Pursuant to the seventh amendment to the Constitution of the United States of America, Plaintiff is entitled to, and demands, a trial by jury.

Dated: May 2, 2023                    Respectfully submitted,

**KAZEROUNI LAW GROUP, APC**

By: */s/ David J. McGlothlin*
David J. McGlothlin, Esq.
Pamela E. Prescott, Esq.
*Attorneys for Plaintiff*

COMPLAINT FOR DAMAGES